THOMPSON v. RICHMOND & DANVILLE R. R. COMPANY.

1. In action against a railroad company under section 1511 of General Statutes to recover damages for personal property destroyed by fire beyond defendant's right of way, testimony is inadmissible to prove that defendant had paid for cotton burned at the same time, which had been received by the company for carriage.

2. Under section 1511 of General Statutes, a railroad company is liable for property destroyed by fire, beyond its right of way, communicated by its locomotive engines or originating within the limits of its right of way in consequence of any act of an authorized agent, and this liability attaches without regard to the question of the company's negligence, or of proximate or remote cause.

Before WALLACE, J., Spartanburg, June, 1885.

This was an action by Jeff Thompson against the defendant company, to recover damages for furniture and other personal property burned at Duncan's, in Spartanburg County, on the line of the Atlanta and Charlotte Airline Railway Company, then operated by the defendant. The action was commenced August 15, 1883. The opinion states the case.

*Messrs. Duncan & Sanders,* for appellant.

*Mr. Stanyarne Wilson,* contra.

March 13, 1886. The opinion of the court was delivered by

MR. JUSTICE MCIVER. On November 24, 1882, the plaintiff had certain personal property destroyed by fire, in a house occupied by him as the tenant of one Greer, which was about one hundred and fifty yards from the railroad of the defendant, and outside the limits of its right of way; and this action was brought to recover damages for the destruction of said personal property under the allegation that the fire originated from the escape of sparks from defendant's engines.

It seems that some cotton on the platform of defendant's depot was also burned on the same day, and, against the objection of defendant, witnesses were allowed to testify that the defendant company had paid for said cotton—his honor, the Circuit Judge, ruling that "it may in one sense be that it is an admission of their liability. It may not be by word, but by acts." It appeared in evidence that this cotton had been delivered at the depot for shipment, and taken charge of by the defendant's agent, though no bill of lading had been given, it being the custom at that depot for shippers to call in the evening and get bills of lading for all cotton put in charge of defendant's agent during the day. At the close of the testimony as to the cotton defendant's counsel moved "that so far as the paying for this cotton could be construed to be an admission of defendant's liability, it be stricken out," to which his honor replied: "That is for the jury. I will charge the jury on the law with regard to it;" but so far as appears from the charge as set out in the record, this matter was not alluded to.

The Circuit Judge after reading to the jury section 1511 of the General Statutes (which will hereinafter be set out in full), in substance instructed the jury that if the plaintiff's property was destroyed by fire communicated by sparks from the locomotive engines of the defendant, or by fire originating within the limits of defendant's right of way, in consequence of the act of any of its authorized agents or employees, the defendant would be liable, the terms of the law above referred to having eliminated all inquiry into the question of negligence and into the question of proximate or remote cause.

The plaintiff having obtained judgment the defendant appealed on various grounds, which raise questions as to the admissibility of the testimony objected to, as affording any evidence of defendant's admission of liability to the plaintiff, and as to the proper construction of the above mentioned section of the general statutes, which will be considered without referring to the various grounds of appeal *seriatim.*

First, as to the question of evidence.    We think the testimony objected to was incompetent, and its admission, with the accompanying remarks of the judge, that: "It may, in one sense, be that it is an admission of their liability.    It may not be by words, but by acts," was well calculated to prejudice the cause of the defendant, especially when he further said: "Here is a fire, in consequence of which this plaintiff claims that he has been injured.    Now, we cannot conceive that every little fact and detail of the burning can be proved, but we must exercise our judgment and be allowed to infer from one fact another.    It is asked whether, as a consequence of this fire cotton having been destroyed, the company did pay for it?    Now, what if they did pay for it?    *The inference is that it is an admission of liability.*"

It seems to us clear that the last sentence of these remarks, which we have italicised, only with the view to direct special attention to it, was well calculated to prejudice the defendant; in fact, virtually decided the case against the company.    For, as we have seen, the judge withdrew from the jury any question as to the negligence of the defendant, and any question as to whether the fire originating on defendant's right of way was the proximate or remote cause of the destruction of plaintiff's property, so

that, practically, the only question for the jury to determine was whether the fire was the consequence of the act of any authorized agent or employee of the defendant; and if the fact that defendant had paid for the cotton was evidence of defendant's admission of its liability to the plaintiff, it must necessarily have been an admission that the fire was the consequence of the act of some one of defendant's agents or employees.

But the test of defendant's liability for the cotton was very different from that of its liability for the property of plaintiff which had been destroyed. If, as seems to be the fact, the cotton had been delivered to the company as a common carrier, then its liability became that of an insurer, and it did not matter who caused its destruction unless it was by the act of God or the public enemy. Hence, if it had been proved to a demonstration that the fire did not originate from any act of the company, or any of its agents or servants, the company would still have been liable for the cotton, but not liable for the plaintiff's property. The fact that no bill of lading had been given for the cotton amounts to nothing, in view of the fact that the testimony showed that the cotton had been delivered to and received by the defendant's agent for shipment, and the giving of the bill of lading simply deferred for convenience until evening. The bill of lading would serve simply as evidence of the delivery for shipment; and if there is other evidence of that fact, the bill of lading would be unnecessary. We are of opinion, therefore, that the fact that the company had paid for the cotton was no evidence whatever of its admission of liability for the destruction of plaintiff's property, and that it was error to receive the evidence objected to.

Next, as to the construction and effect of section 1511 of the General Statutes, which reads as follows: "Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road in consequence of the act of any of its authorized agents or employees, except in case where property shall have been placed on the right of way of such corporation unlawfully or without its consent, and shall have an insurable interest in the property upon its route, for which it may

be so held responsible, and may procure insurance thereon in its own behalf." An analysis of the terms of this section will show that the legislature intended to make a railroad company liable for property destroyed by fire communicated by its locomotive engines, or by a fire which originated within the limits of its right of way in consequence of any act of an authorized agent, unless the property destroyed was placed on the right of way of the company unlawfully or without its consent.

Hence, in a case of this kind, the only questions would be whether the property was destroyed by fire communicated by its locomotive engines, or by fire which originated on its right of way in consequence of the act of some agent of the company, and the only defences would be either that the fire, though originating on the company's right of way, was not the result of any act of one of the company's agents or employees, or that the property destroyed had been placed on said right of way unlawfully or without the consent of the company. Nothing is said in the act about negligence, and the very fact of such omission shows that the object of the act was to eliminate any question of negligence, inasmuch as under the law as it previously stood the company would only be liable in case of negligence. We are, therefore, forced to conclude, that the purpose of the act was to dispense with any inquiry into that subject, for it declares the company liable for property destroyed by fire, originating on its right of way from any act of any of its agents, without any qualification whatsoever, either as to negligence or otherwise.

So, too, under the terms of the act, there can be no necessity for an inquiry as to whether the fire caused by the act of the company or its agents was the proximate or remote cause of the destruction of the property in question, as would have been the case under the old law; for it declares in absolute terms, without any qualification, that the company shall be liable for the destruction of property by fire which originated within the limits of the right of way from some act of the company or its agent or employee, and this precludes any inquiry as to whether the fire so originating was the proximate or remote cause of the damage complained of. As the Circuit Judge well says, if the act had simply declared that the company should be liable to any person whose

property may be injured or destroyed by fire communicated by sparks from its locomotive engine and stopped there, it may be that then the question as to proximate or remote cause might have been a material inquiry, but the act goes on to declare that the company shall be liable for damage caused by fire which *originated* on the right of way. So that, if the fire originated there from the act of the company or its agents, it is liable, even though such fire may have been the remote and not the proximate cause of the damage complained of, as there is nothing in the act to qualify or restrain the general terms used.

Again, it is contended that the liability imposed by this act does not extend to property injured or destroyed outside of the limits of a railroad company's right of way, but is confined only to such property as may, lawfully and by the consent of the company, be placed on its right of way. It is not pretended that there is any such express limitation in the act, but it is argued that, construing all the different parts of the section together, such is the necessary inference. The latter part of the section, which exempts the company from liability for injury to property placed upon its right of way unlawfully or without its consent, and which gives to the company the right to take out insurance for its own benefit on property for the destruction of which it is made liable, is relied on for this purpose. The provision which exempts the company from the stringent rule of liability imposed by the act for property unlawfully, or without its consent, placed upon its right of way, cannot have the effect contended for, inasmuch as this provision simply exempts the company from this stringent rule of liability to mere *trespassers;* and, therefore, the only remaining inquiry is as to the effect of the provision authorizing the company to insure the property for injury to which it may be made responsible under the act.

It is argued that the intention was to limit the liability to such property as the company was given an insurable interest in, so that its liability should be co-extensive with the means of relief afforded the company by the act; and that as it was given an insurable interest only in the property which was on its right of way, its liability under the act could only extend to such property. It will be observed, however, that this argument is based

upon the assumption, unwarranted, as we think, by the terms of the act, that the company is given an insurable interest only in the property placed upon its right of way. In the previous parts of the section, whenever it was designed to speak of the "right of way," those terms were used. For example, in speaking of the origin of the fire, the language used is, "originating within the limits of the right of way of said road," &c., and in the exception, as to the liability of the company, the language is, "except in any case where property shall have been placed on the right of way of such corporation unlawfully or without its consent;" but when we reach the provision as to insurance, the phraseology is changed, and the language there used is, "and shall have an insurable interest in the property *upon its route*, for which it may be so held responsible."

This, it seems to us, indicates exactly the opposite of what has been assumed in appellant's argument, and that the intention was to give a railroad company an insurable interest in the property along its route, and not simply upon that within the limits of its right of way. Indeed, we suppose that, without the act, a railroad company would have an insurable interest in all property delivered to it for transportation as a common carrier, and it is property of this kind which is most usually placed upon its right of way, and hence the purpose of the act must have been to give a railroad company an insurable interest in any property *upon its route*, which, without the act, it could not have. We do not see, therefore, that the provisions of the section relied upon necessarily imply that the intention of the act was to limit the rule of liability established by the act to such property as might be within the limits of the right of way, especially when the act declares in general and comprehensive terms, that "Every railroad corporation shall be responsible in damages to *any* person or corporation whose buildings or other property," without any limitation as to the location or kind of property, "may be injured by fire," &c.

The judgment of the court is, that the judgment of the Circuit Court be reversed upon the first ground considered herein, and that the case be remanded to that court for a new trial.